IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$196,634 SEIZED FROM CITYWIDE BANK ACCOUNT ENDING IN 9662,<br><br>and<br><br>$3,648,375 SEIZED FROM CITYWIDE BANK ACCOUNT ENDING IN 8557.<br><br>Defendants In Rem. | Civil No. 1:21-cv-_____ |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the plaintiff, United States of America, by and through its counsel, Raj Parekh, Acting United States Attorney for the Eastern District of Virginia, and Kevin Hudson and Annie Zanobini, Assistant United States Attorneys, and brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. The United States brings this action *in rem* seeking the forfeiture of all right, title, and interest in the defendants *in rem* identified in the case caption above (the "defendant property").

2. The United States' claim arises from a scheme to defraud Company #1, and the defendant property constitutes the proceeds of violations of 18 U.S.C. § 1343 (Wire Fraud and

1

Honest Services Wire Fraud) and 18 U.S.C. § 1349 (Wire Fraud Conspiracy), and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

3. I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, and information obtained from other individuals, including law enforcement personnel.

## THE DEFENDANTS IN REM

4. Defendant $196,634 was seized on May 8, 2020 from a Citywide Bank account ending in 9662 in the Northern District of Iowa. The Citywide Bank account ending in 9662 is in the name of Entity #1. The defendant property is currently in the possession of the United States Marshals Service in Richmond, Virginia.

5. Defendant $3,648,375 was seized on May 8, 2020 from a Citywide Bank account ending in 8557 in the Northern District of Iowa. The Citywide Bank account ending in 8557 is in the name of Entity #2. The defendant property is currently in the possession of the United States Marshals Service in Richmond, Virginia.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over actions commenced by the United States under 28 U.S.C. § 1345, and over forfeiture actions under 28 U.S.C. § 1355(a) and (b).

7. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia.

8. Venue is proper within this judicial district under 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia.

## FACTUAL ALLEGATIONS

9. The Federal Bureau of Investigation ("FBI") is investigating a fraudulent kickback scheme involving individuals employed by Company #2, a Denver, Colorado-based commercial real estate and development company, as well as certain former employees at Company #1.

10. Person #11 oversaw real estate development in Northern Virginia, within the Eastern District of Virginia, for Company #1 (doing business under a third-party company name) for its data centers. Until in or around June 2019, Person #12 was Person #11's supervisor at Company #1.

11. Person #11 and Person #12 were two of the primary Company #1 decision-makers for Northern Virginia real estate site identification and selection, as well as selection of specific developers, including Company #2.

12. Since 2018, Company #1 has executed leases with Company #2 for nine Company #1 data centers in Northern Virginia, with a total approved to be spent for these deals of approximately $415.5 million. Company #2's joint venture partner on the Company #1 developments in Northern Virginia was Company #5.

13. The scheme involving Company #2 included referral payments it made to an entity called the Villanova Trust, which was controlled by Person #1, who is Person #11's brother, in exchange for steering Company #1 data center deals in Northern Virginia to Company #2.

14. Person #2, who was the Chief Executive Officer of Company #2, and Person #1 had entered into a contractual agreement whereby Company #2 would pay Person #1 a portion of the various fees it received on its Company #1 data center deals in Northern Virginia. Person #1 knew a portion of the referral fees paid to Person #1 via the Villanova Trust would be transferred

3

to Person #11 and Person #12 for the purposes of securing the development deals with Company #1 in Northern Virginia.

15. From in or about March 2018 to in or about August 2019, financial records indicated that Company #2 wired the Villanova Trust approximately $5,112,983.84.

16. In turn, from in or about August 2018 to in or about August 2019, Person #1, doing business as the Villanova Trust, wired approximately $3,375,625 to a bank account established in the name of the 2010 Irrevocable Trust, which was maintained by Person #7 on behalf of Person #11 and Person #12.

17. Company #1 employees were not authorized to benefit from "referral fees" or other financial compensation paid by Company #2, or any other developers, related to Company #1's real estate development projects.

18. Company #1's contractual arrangements relating to its real estate development deals involving Company #2 represented and warranted that no third-party brokers were used in the transactions unless set forth in the agreement. There was no formal association between Company #1 and Person #1 or the Villanova Trust, nor were Person #1 or the Villanova Trust set forth as third-party brokers in the aforementioned contractual arrangements.

19. Person #11 has admitted to accepting funds from Company #2 associated with his job with Company #1 and that the CEO of Company #2, Person #2, paid the kickbacks to the Villanova Trust associated with Company #1's development deals in Northern Virginia.

20. Person #1 has also acknowledged the existence of a "referral agreement" with Person #2 of Company #2. Person #1 admitted that he was aware that funds from the 2010 Irrevocable Trust were being disbursed to Person #11. Person #1 noted that Person #2 was aware that the money from the deals with Company #1 were being transferred to Person #11 and

Person #12. Person #2 acknowledged payments to Person #11 and Person #12 in a recorded meeting with Person #3, a copy of which was obtained by the FBI during the course of the investigation.

21. In addition to the kickbacks paid to the Villanova Trust, in or about May 2018 Person #2 also took Person #11, Person #12, and Person #3 on an all-expense paid fishing trip to the Florida Everglades to celebrate the first deal completed between Company #2 and Company #1. Neither Person #11 nor Person #12 disclosed this trip to Company #1. The trip was in violation of Company #1's conflict of interest policies and would have been prohibited had they disclosed it to Company #1.

22. In or about March 2019, Person #2 took Person #11 and Person #3 on an all-expense paid hunting trip to New Zealand. Person #11 likewise did not disclose this trip to Company #1 and, had it been disclosed, it would have been prohibited for violating Company #1's conflict of interest policies.

23. Prior to the above-described arrangement whereby Company #2 and Person #2 paid kickbacks to Person #11 and Person #12 through Person #1 and the Villanova Trust in order for Person #11 and Person #12 to steer Company #1 development business to Company #2, Company #2 had never completed a data center development deal.

24. Company #5 was Company #2's joint venture partner on the Company #1 developments in Northern Virginia. The ownership structure for the Company #2 and Company #5 joint venture in Northern Virginia was 85.72% Company #5 and 14.28% Company #2.

25. No one at Company #5 was aware of Person #2's kickback scheme described above with Company #1 until February 2020 when Person #10, who was formerly an executive

with Company #2, provided information to Company #5 about his suspicions related to the kickback scheme involving Company #2.

26. Entity #1 was one of the properties Company #2 and Company #5 developed for Company #1 in Northern Virginia. Two of the other properties Company #2 and Company #5 developed for Company #1 are associated with a separate legal entity, Entity #2.

27. On or about April 2, 2020, Company #5 removed Company #2 as the administrative manager of the joint venture arrangements via a "Notice of Cause Event Letter" resulting from Company #5's discovery of Person #2's kickback scheme described above. The letter referenced a cause event described in the operating agreement between Company #2 and Company #5.

28. Despite Company #5's termination of Company #2's administrative role in the properties developed for Company #1 in Northern Virginia, the operating agreement required Company #5 to promptly make payment to Company #2 relating to the redemption of any equity interests at fair market value, measured at the time of removal. The redemptions paid to Company #2 are a result of the for-cause removal and were tied to properties Company #2 developed for Company #1 in Northern Virginia. More specifically, the payments are tied to the development deals that Company #1 engaged in with Company #2 associated with the above-described kickback scheme.

29. On May 8, 2020, Company #5 made a wire transfer of $196,634 to defendant Citywide Bank account ending in 9662 in the name of Entity #1. On May 8, 2020, Company #5 also wire transferred $3,648,375 to defendant Citywide Bank account ending in 8557 in the name of Entity #2. Both defendant bank accounts were under the control of Company #2. These payments from Company #5 to Company #2 were made pursuant to Company #5's contractually

obligated redemption payments to Company #2 for the Company #1 projects in Northern Virginia, which projects were steered to Company #2 through the kickback scheme described above.

30. On May 8, 2020, the United States seized the defendant property with a seizure warrant authorized by a U.S. Magistrate Judge.

## CLAIM FOR RELIEF
### (Forfeiture under 18 U.S.C. §§ 981(a)(1)(C))

31. The United States incorporates by reference paragraphs 1 through 30 above as if fully set forth herein.

32. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title) or a conspiracy to commit such an offense."

33. Title 18, United States Code, Section 1956(c)(7)(D) provides that the term "specified unlawful activity" includes "an offense under . . . section 1343 (relating to wire fraud)." Title 18, United States Code, Section 1346 also provides that a wire fraud scheme "includes a scheme or artifice to deprive another of the intangible right of honest services."

34. As set forth above, the defendant property constitutes criminal proceeds of the wire fraud and wire fraud conspiracy.

35. As such, the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that judgment be entered in its favor against the defendant property; that pursuant to law, notice be provided to all interested parties to appear and

show cause why the forfeiture should not be decreed; that the defendant property be forfeited to the United States of America and delivered into its custody for disposition according to law; that plaintiff be awarded its costs and disbursements in this action; and for such and further relief as this Court may deem just and proper.

Dated: May 4, 2021

                Respectfully submitted,

                Raj Parekh
                Acting United States Attorney

By: _____
                Kevin Hudson
                Assistant United States Attorney
                Virginia State Bar No. 81420
                Attorney for the United States
                721 Lakefront Commons, Suite 300
                Newport News, Virginia 23606
                Office Number: (757) 591-4000
                Facsimile Number: (757) 591-0866
                Email Address: kevin.hudson@usdoj.gov

## VERIFICATION

I, Randy C. Combs, Special Agent, Federal Bureau of Investigation, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture in Rem is based on information known by me personally and/or furnished to me by various federal, state, and/or local law enforcement agencies or personnel, and that everything contained herein is true and correct to the best of my knowledge.

Executed at Manassas, Virginia, this 4th of May, 2021.

_____
Randy C. Combs
Special Agent
Federal Bureau of Investigation